IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:05CR132 |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM AND ORDER |
| DARNELL L. RUSSELL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on the objection of defendant Darnell L. Russell,

Filing No. 31, to the report and recommendation of Magistrate Judge F.A. Gossett, Filing

No. 26.  Russell contends that Magistrate Judge Gossett erred in finding that 1) Officer

James Magett had reasonable suspicion to detain Russell pursuant to *Terry v. Ohio,* 392

U.S. 1 (1968); 2) that Russell abandoned the coat and handgun when he threw them to the

ground while fleeing from Officer Magett; and, 3) Russell's statements were voluntary and

not the product of a police interrogation.  Pursuant to 28 U.S.C. § 636(b)(1)(A) and NELR

72.3(d), the court has conducted a de novo review of the record including the transcript of

the suppression hearing, Filing No. 23 (hereafter, Tr.).  The court overrules the defendant's

objections.

## BACKGROUND

The magistrate judge's statement of facts is detailed and accurate, so the court

need not engage in a lengthy recitation.  Briefly, on January 31, 2005, at 10:30 a.m., a

robbery occurred at the 99 Cent Store located at 4205 Redman in Omaha, Nebraska.  (Tr.

4:9-13).  Following the robbery, law enforcement officers set up a perimeter to search for

the robber and released a description of the suspect based upon witness statements. (Tr. 5:3-22). Officer James Magett of the Omaha Police Department testified that he received a description of a black male, 160-170 pounds, five-foot-eight to five-foot-nine, wearing blue or black jeans, a black jacket, a black mask, and carrying a handgun. (Tr. 20: 13-22). Officer Levora Beaunea, also of the Omaha Police Department, testified the dispatcher also described the robber as being in his twenties and wearing a dark-colored sweatshirt hoody. (Tr. 39: 10-12).

After establishing the robber fled south from the 99 Cent Store, Officer Magett proceeded to station his police cruiser at the southwest corner of Fontenelle Boulevard and Browne Street, roughly six or seven blocks southeast of the 99 Cent Store. (Tr. 6:4-6). Approximately an hour-and-a-half after the robbery, Officer Magett spotted the defendant walking southbound on Fontenelle Boulevard toward the intersection of Fontenelle and Browne. (Tr. 7: 11-14).

Russell testified that at the time of his interaction with Officer Magett, he was wearing a dark navy blue coat, light gray pants with a shade of black going through the side of the pants, all gray "Jordan" shoes, and a gray baseball cap. (Tr. 73: 10-14, 20-24; 75:21). On cross-examination, the defendant testified that he was also wearing a hoody under his dark navy blue coat. (Tr. 76: 8-14).

Officer Magett proceeded to stop Russell based upon "the general description of the party and the fact that the party appeared to me to be kind of shifting as he was moving, like away from me instead of–as he initially saw me, instead of continuing to walk straight, he seemed to be shifting towards going toward the street and that's what initially brought my attention to him." (Tr. 7: 16-22). Additionally, Officer Magett testified that Russell was

2

"walking in a fast action" and that his "eyes seemed to be shifting," giving the "impression that [Russell] didn't want to have anything to do with the police." (Tr. 8:21-25; 9:1, 12-21).

As Russell attempted to cross the intersection, Officer Magett commanded him to stop and to follow him to the southwest corner of Fontenelle and Brown. (Tr. 27: 2-7). Based upon the totality of the circumstances, including the knowledge the robber possessed a hand gun, along with Russell's appearance and elusive behavior, Officer Magett concluded he should search Russell for weapons for his own protection. (Tr. 10: 1-9).

Officer Magett prepared to handcuff Russell to administer a pat down when Russell pushed Officer Magett to the ground resulting in a foot pursuit of approximately two blocks. (Tr. 9:13-16; 11:3-5; 28:18-20). While fleeing, Russell dropped a dark blue jacket at the southwest corner of Fontenelle and Browne. (Tr. 45:13-25; 46:1-2). Officer Beaunea secured the jacket and testified to finding a cell phone and crack cocaine in the jacket along with a Smith and Wesson .22 caliber revolver lying next to the jacket. (Tr. 45:13-25; 46:1-6, 23-24).

The police apprehended and arrested Russell without reading him his *Miranda* warnings, thereafter placing him in a police cruiser. (Tr. 63:19-25). While being transported, first to the 99 Cent Store and then to Police Central Station, Officer Beaunea testified Russell stated "he didn't commit any robbery. He was a felon in possession of a handgun, but he certainly didn't commit a robbery or shoot at anybody." (Tr. 60: 22-24). Officer Jill Schillerberg, who was transporting Russell, testified that she did not talk with Russell except to advise him that she was transporting him from one place to another. (Tr. 64:3).

3

## LEGAL ANALYSIS

### A. The *Terry* Stop

The magistrate judge found that Officer Magett's decision to stop and subject Russell to a limited search for weapons without probable cause for arrest was reasonable under the analysis required by *Terry v. Ohio*, 392 U.S. 1 (1968). The magistrate judge observed that "considering the totality of the circumstances, and acknowledging that police officers may draw on their own experiences and training to make inferences from the deduction about information available to them that might not be significant to an untrained person, I find that it was reasonable for Officer Magett to command the defendant to stop and subject him to a limited search for weapons…" Russell contends Officer Magett unreasonably chose to stop him. Russell claims Officer Magett's behavior was such that an officer could not have reasonably suspected criminal activity afoot and, accordingly, Officer Magett violated Russell's Fourth Amendment right of protection from illegal search and seizure.

The Fourth Amendment of the Constitution provides the right of people to be secure against unreasonable searches and seizures. However, the Supreme Court has held "what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." *Elkins v. United States*, 364 U.S. 206, 222 (1960). Accordingly, the question before the court is whether Officer Magett's brief detention and attempted limited search of Russell for weapons was unreasonable.

In *Terry*, the Supreme Court held that a police officer who has reasonable suspicion supported by specific and articulable facts that criminal activity "may be afoot" can briefly detain a person for investigation, even if the officer lacks probable cause. *Terry*, 392 U.S.

4

at 30.   The officer's specific and articulable facts must be more than "inchoate and unparticularized suspicion or hunch" *Id.* at 27.   Furthermore, the Fourth Amendment requires "some minimal level of objective justification" for making a *Terry* stop.   *INS v. Delgado*, 466 U.S. 210, 217 (1984).   However, "that level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7 (1989).   Additionally, in evaluating the validity of a *Terry* stop, the court must consider "the totality of the circumstances."   *Sokolow*, 490 U.S. at 8, *citing United States v. Cortez*, 449 U.S. 411, 417 (1981).

In the case at bar, Officer Magett was given a description of a robbery suspect.  This description indicated the suspect to be a black male, 160-170 pounds, five-foot-eight to five-foot-nine, wearing blue or black jeans, a black jacket, a black mask, and carrying a handgun.  Officers were also informed that the suspect was wearing a dark colored hoody and believed to be in his early twenties.  When Officer Magett came into contact with Russell, he encountered a young man who fit the suspect's description.  Russell is a young, black male who at the time was wearing a dark colored jacket and dark colored hoody.  Although Russell's pants were gray, they did have shades of black running along the sides.  Equally understandable is the discrepancy in height and weight between Russell and the description of the suspect.  The difference between five-foot-eight and five-foot-six is negligible and it is reasonable for a young man whose actual weight is 130 pounds to appear to be 160 to 170 pounds when wearing both a large, dark colored jacket and hooded sweatshirt.

In addition, Officer Magett did not make his decision to detain Russell based solely on the fact that Russell fit the robbery suspect's description.  In addition to fitting the

description, Russell was "walking in a fast action" and his "eyes seemed to be shifting," giving the "impression that [Russell] didn't want to have anything to do with the police."(Tr. 8:21-25; 9:1, 12-21).  When Officer Magett initially encountered Russell, he "was moving, like away from me instead of–as he initially saw me, instead of continuing to walk straight, he seemed to be shifting towards going toward the street and that's what initially brought my attention to him." (Tr. 7:16-22).  Also, Officer Magett observed Russell and his elusive behavior all within a few blocks of where the robbery occurred and in the direction of where the suspect allegedly fled.

Officer Magett's observations, when taken together, under the totality of the circumstances, rise to the level of reasonable suspicion.  The Supreme Court has repeatedly held that "wholly lawful conduct might justify the suspicion that criminal activity was afoot."  *Reid v. Georgia*, 448 U.S. 438, 441 (1980); *see also Terry,* 392 U.S. at 22; *Cortez*, 449 U.S. at 417-419; *Illinois v. Gates*, 462 U.S. 213, 243-244, n. 13 (1983); *Sokolow*, 490 U.S. at 1, 7.  Given the specific and articulable facts relied on by Officer Magett, coupled with the totality of the circumstances and the court's practice of giving deference to police officers to "draw on their own experience and specialized training to make inferences from and deduction about the cumulative information available to them," the court finds Officer Magett's stop and attempted search of Russell for weapons was reasonable. *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

**B. Abandonment of the Firearm**

The magistrate judge found that when Russell removed and discarded his jacket while fleeing from police, he abandoned the jacket and any items it contained.  Russell claims that he removed his jacket as a result of Officer Magett's unlawful *Terry* stop and,

therefore, he did not forfeit his expectation of privacy in the jacket and its contents.  The court finds that Russell abandoned his jacket and contents.

The Eighth Circuit has held "in determining whether property has been abandoned for Fourth Amendment purposes, the court must look to the totality of the circumstances, noting in particular two factors: whether the suspect denied ownership of the property and whether he physically relinquished the property."  *United States v. Liu*, 180 F.3d 957, 960 (8th Cir. 1999).  In the case at hand, Russell, in an attempt to rid himself of contraband, removed his jacket and discarded it while fleeing from the police.  In doing so, Russell forfeited his expectation of privacy in his jacket and its contents.  *United States v. Davis*, 103 F.3d 660, 671-72 (8th Cir. 1996).  Accordingly, the police acted constitutionally in searching Russell's abandoned jacket, discovering his hand gun.  *United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir.1997).  Because Officer Magett lawfully detained Russell and Russell abandoned his jacket when fleeing from the police, the magistrate judge correctly found Russell abandoned his coat and its contents. As a result, Russell's motion to suppress the handgun is denied.

## C.  Defendant's Statement

The magistrate judge found Russell's statement spoken while in police custody to be a volunteered statement and not the product of an interrogation.  Russell contends he made his statements shortly after an unlawful stop and frisk that resulted in his arrest, and, therefore, the statement should not be admissible under the "fruit of the poisonous tree" doctrine.

*Miranda* protections are triggered "only when a defendant is both in custody and being interrogated."  *United States v. Lawrence*, 952 F.2d 1034, 1036 (8th Cir.1992);

7

*Miranda v. Arizona,* 384 U.S. 436 (1966).  The Supreme Court has held that "interrogation is express questioning, or words or actions that the police should know are reasonably likely to elicit an incriminating response."  *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

Having previously found Officer Magett's *Terry* stop lawful, Russell's "fruit of the poisonous tree" argument is without merit.  Alternatively, Russell's objection is erroneous because he voluntarily made the statements while in police custody but not under interrogation.  Following his altercation with Officer Magett, the police arrested Russell for "obstruction" but failed to read him his *Miranda* warnings.  The police placed Russell in a police cruiser following his arrest.  He was then driven to the location of the 99 Cent Store robbery and then to the Central Police Station.  During this twenty minute drive, the record indicates law enforcement officers did not speak to Russell other than to inform him of where he was being transported.  Furthermore, Officer Schillerberg, who was transporting Russell, testified that her radio transmissions to the dispatcher were limited to informing the dispatcher of her whereabouts.

Neither Officer Schillerberg's courtesy of informing Russell where he was being transported nor the relaying of her location to a police dispatcher rise to the level of interrogation.  Voluntary statements uttered by a suspect that are not obtained by police questioning or by police actions that are likely to produce an incriminating response are admissible.  *United States v. McCoy*, 200 F.3d 582, 584 (8th Cir. 2000).  Accordingly, Russell's statements made while in police custody, but not under interrogation, are admissible.

8

IT IS ORDERED:

1. Defendant Darnell L. Russell's objections, Filing No. 31, to the magistrate judge's report and recommendation, are overruled;

2. The report and recommendation of the magistrate judge, Filling No. 26, is adopted in its entirety; and

3. Defendant Darnell L. Russell's motion to suppress, Filling No.16, is denied.

DATED this 5th day of October, 2005.

BY THE COURT:


s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge